JUDGE BUCHWALD

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SOUFIANE OULAHYANE,<br>a/k/a "Soufiane Oulahya,"<br><br>Defendant. | **SEALED INDICTMENT**<br><br>23 Cr. |

23 CRIM 215

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/26/23

**COUNT ONE**
**(Wire Fraud)**

The Grand Jury charges:

Overview

1.  At all times relevant to this Indictment, SOUFIANE OULAHYANE, a/k/a "Soufiane Oulahya," the defendant, a national of the Kingdom of Morocco, engaged in a scheme to obtain digital currency and assets from a victim ("Victim-1") in New York, New York. In total, OULAHYANE obtained approximately $450,000 worth of Ethereum cryptocurrency and non-fungible tokens ("NFTs") belonging to Victim-1.

Cryptocurrency and NFTs

2.  Cryptocurrency is a digital currency in which transactions are verified and records are maintained by a decentralized system using cryptography, rather than a centralized authority such as a bank or government. Like traditional fiat currency, there are multiple types of cryptocurrency, such as Bitcoin, Ethereum, Litecoin, and Tether, among others. Due to its decentralized nature and limited regulation, cryptocurrency allows users to transfer funds more anonymously than would be possible through traditional banking and credit systems.

Cryptocurrency owners typically store their cryptocurrency in digital "wallets," which are identified by unique electronic "addresses."

3.  Each cryptocurrency transaction, regardless of the cryptocurrency denomination, is recorded on a public ledger commonly referred to as a "blockchain," which acts as an accounting ledger. The blockchain records, among other things, the date and time of each cryptocurrency transaction, the unique cryptocurrency addresses associated with the transaction and the sending and receiving parties, and the amount of cryptocurrency transferred, but does not identify the parties who control the cryptocurrency addresses involved in the transaction.

4.  An NFT is a non-interchangeable unit of data stored on the blockchain that can be sold and traded. Most NFTs are part of the Ethereum blockchain, which is one of the largest open-source blockchains. Ether ("ETH") is the native cryptocurrency of the Ethereum blockchain.

5.  There are different types of NFT data files that can be purchased. The most basic NFT data file is similar to a .jpeg image file that provides a purchaser with an electronic image and a certificate of ownership. The digital file is stored on the Ethereum blockchain, and typically cannot be edited, modified, or deleted. By contrast, a "utility" NFT data file offers added benefits, such as reward programs, giveaways, and early access to events for NFT holders. Each NFT is commonly referred to as a "token," which is uniquely identifiable on the blockchain.

6.  The process of turning a digital file into an NFT (*i.e.* a crypto collectible or digital asset) on the Ethereum blockchain is typically referred to as "minting."

7.  OpenSea is the first and, currently, the largest NFT marketplace. OpenSea offers users the ability to mint NFTs directly on its platform or use a third-party platform for NFT minting. In the latter case, OpenSea is only used by OpenSea accountholders to trade and/or sell NFTs on the secondary market.

8. MetaMask is a cryptocurrency wallet used to interact with the Ethereum blockchain. It allows users to access their Ethereum wallet through a browser extension or mobile application. To access their MetaMask accounts, users must enter their seed phrase. A seed phrase, like a password, is a random set of words generated by the user's cryptocurrency wallet that is needed to access the wallet. MetaMask cryptocurrency wallets can be linked to the OpenSea marketplace, such that users can trade or sell the NFTs in their MetaMask wallets on the OpenSea marketplace.

The Scheme to Defraud

9. SOUFIANE OULAHYANE, a/k/a "Soufiane Oulahya," the defendant, engaged in a scheme to compromise Victim-1's MetaMask cryptocurrency wallet and steal Victim-1's cryptocurrency and NFTs. To carry out his scheme, OULAHYANE created and used a "spoofed" website. Spoofing, as it pertains to cybersecurity, is when a malicious cyber actor disguises an email address, sender name, phone number, or website URL—often just by changing one letter, symbol, or number—to convince a victim that the victim is interacting with a trusted source. Here, OULAHYANE spoofed the OpenSea login website by registering and creating a website that was intentionally designed to be confusingly similar to the legitimate OpenSea login website.

10. To promote the spoofed OpenSea website and trick victims into using the spoofed site, SOUFIANE OULAHYANE, a/k/a "Soufiane Oulahya," the defendant, paid for sponsored links on a popular internet search engine ("Search Engine-1"). Accordingly, when users of Search Engine-1 searched for "opensea," the first search result would be a link to the spoofed website.

11. On or about September 26, 2021, while in New York, New York, Victim-1 searched for OpenSea using Search Engine-1. That search yielded a link to the spoofed version of the OpenSea login website. Believing that the spoofed OpenSea login website was the legitimate

OpenSea website, Victim-1 entered their MetaMask seed phrase. By doing this, Victim-1 unwittingly transferred Victim-1's MetaMask account credentials to SOUFIANE OULAHYANE, a/k/a "Soufiane Oulahya," the defendant, giving OULAHYANE access to Vicitm-1's MetaMask wallet.

12. Almost immediately, SOUFIANE OULAHYANE, a/k/a "Soufiane Oulahya," the defendant, used Victim-1's seed phrase to obtain unauthorized access to Victim-1's MetaMask wallet. After obtaining unauthorized access, OULAHYANE, without the permission of Victim-1, transferred the cryptocurrency from Victim-1's MetaMask wallet to another cryptocurrency wallet outside of Victim-1's control. In addition, OULAHYANE sold approximately 39 of Victim-1's NFTs on the OpenSea marketplace and transferred the fraudulent cryptocurrency proceeds to a wallet outside of Victim-1's control.[1] For example:

    a. OULAHYANE sold an NFT from the "Bored Ape Yacht Club" series, depicted below, which Victim-1 had purchased for approximately 49 ETH.



---

[1] The purchasers of Victim-1's NFTs on the OpenSea marketplace appear to be bonafide purchasers with no relationship to OULAHYANE.

b.      OULAHYANE sold an NFT from the "Meebit" series, depicted below, which Victim-1 had purchased for approximately 9.88 ETH.



c.      OULAHYANE sold an NFT from the "Bored Ape Kennel Club" series, depicted below, which Victim-1 had purchased for 6 ETH.



d.      OULAHYANE sold an NFT from the "CryptoDad" series, depicted below, which Victim-1 had purchased for 1.789 ETH.



13.     In total, SOUFIANE OULAHYANE, a/k/a "Soufiane Oulahya," stole from Victim-1 cryptocurrency and NFTs that Victim-1 paid approximately $448,923 to obtain.

Statutory Allegations

14.     In or about September 2021, in the Southern District of New York and elsewhere, SOUFIANE OULAHYANE, a/k/a "Soufiane Oulahya," the defendant, who will be first brought to and arrested in the Southern District of New York, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, OULAHYANE engaged in a scheme to cause Victim-1 to electronically transmit Victim-1's cryptocurrency wallet seed phrase to OULAHYANE in order to obtain access to and sell Victim-1's NFTs, and to steal the resulting cryptocurrency proceeds and other cryptocurrency owned by Victim-1, which scheme involved interstate wires in and out of the Southern District of New York.

(Title 18, United States Code, Sections 1343, 3238, and 2.)

### COUNT TWO
### (Access Device Fraud)

The Grand Jury further charges:

15.     The allegations contained in paragraphs 1 through 13 of this Indictment are repeated and realleged as if fully set forth herein.

16.     In or about September 2021, in the Southern District of New York and elsewhere, SOUFIANE OULAHYANE, a/k/a "Soufiane Oulahya," the defendant, who will be first brought to and arrested in the Southern District of New York, knowingly and with intent to defraud, as part

of an offense affecting interstate and foreign commerce, attempted to and did traffic in and use one and more unauthorized access devices during a one-year period, and by such conduct obtained things of value aggregating to more than $1,000 during that period, to wit, OULAHYANE engaged in a scheme to cause Victim-1 to electronically transmit Victim-1's cryptocurrency wallet seed phrase to OULAHYANE, in order to obtain access to and sell Victim-1's NFTs, and to steal the resulting cryptocurrency proceeds and other cryptocurrency owned by Victim-1, and through such scheme obtained cryptocurrency worth more than $1,000.

(Title 18, United States Code, Sections 1029(a)(2), 3238, and 2.)

## COUNT THREE
### (Access Device Fraud)

The Grand Jury further charges:

17. The allegations contained in paragraphs 1 through 13 of this Indictment are repeated and realleged as if fully set forth herein.

18. In or about September 2021, in the Southern District of New York and elsewhere, SOUFIANE OULAHYANE, a/k/a "Soufiane Oulahya," the defendant, who will be first brought to and arrested in the Southern District of New York, knowingly and with intent to defraud, as part of an offense affecting interstate and foreign commerce, attempted to and did effect transactions with one and more access devices issued to another person or persons, to receive payment and other things of value during a one-year period the aggregate value of which was greater than $1,000, to wit, engaged in a scheme to cause Victim-1 to electronically transmit Victim-1's cryptocurrency wallet seed phrase to OULAHYANE, in order to obtain access to and sell Victim-1's NFTs, and to steal the resulting cryptocurrency proceeds and other cryptocurrency owned by Victim-1, and through such scheme obtained cryptocurrency worth more than $1,000.

(Title 18, United States Code, Sections 1029(a)(5), 3238, and 2.)

## COUNT FOUR
### (Aggravated Identity Theft)

The Grand Jury further charges:

19. The allegations contained in paragraphs 1 through 13 of this Indictment are repeated and realleged as if fully set forth herein.

20. In or about September 2021, in the Southern District of New York and elsewhere, SOUFIANE OULAHYANE, a/k/a "Soufiane Oulahya," the defendant, who will be first brought to and arrested in the Southern District of New York, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, OULAHYANE used and transferred Victim-1's cryptocurrency wallet seed phrase during and in relation to the wire fraud and access device fraud violations charged in Counts One through Three of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1),
1028A(b), 3238, and 2.)

## FORFEITURE ALLEGATIONS

21. As a result of committing the wire fraud offense alleged in Count One of this Indictment, SOUFIANE OULAHYANE, a/k/a "Soufiane Oulahya," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

22. As a result of committing the access device fraud offenses alleged in Count Two

8

and Three of this Indictment, SOUFIANE OULAHYANE, a/k/a "Soufiane Oulahya," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(2)(B) and 1029(c)(1)(C), any and all property constituting, or derived from, proceeds obtained directly or indirectly, as a result of the commission of said offenses, and any and all personal property used or intended to be used to commit said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

23.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third person;

    c.   has been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON
4/26/23

_____
DAMIAN WILLIAMS
United States Attorney

arrest warrant, True Bill
& Sealed Indictment filed before
OTW on 4/26/23